# CHARLESTON

DILLON v. UNITED STATES COAL & COKE CO.

Submitted February 2, 1915. Decided February 23, 1915.

1. MASTER AND SERVANT—*Minor Employe—Duty of Master.*

    The duty imposed by law requires a master to warn and instruct his minor servant of latent dangers; and if, in obeying the orders of a general superintendent, he engages in services other than those regularly assigned to and performed by him, danger from which the servant does not comprehend or appreciate because unknown to him, but of which the master knows or by the exercise of reasonable diligence ought to know, and fails so to warn and instruct, he is liable for resulting injuries to a servant free from negligence directly contributing thereto. (p. 671).

2. SAME—*Injury to Minor Employe—Appreciation of Danger—Question for Jury.*

    Whether a minor servant, over fourteen years old, without warning or instruction, understands and appreciates dangers incident to work not within the scope of his regular duties, is a question of fact for the jury, under proper instructions from the court trying the case. (p. 671).

3. SAME—*Injury to Minor Employe—Assumption of Risk—Duty to Warn—Waiver.*

    A minor servant may, without assumption of risk or waiver of the master's duty to warn and instruct, obey the order of a general superintendent to perform specific work outside of his regular employment, unless, by reason of his capacity and experience and knowledge of the hazards of the work, he fully appreciates the dangers and the proper means of avoiding injury therefrom. (p. 675).

Error to Circuit Court, McDowell County.

Action by Lon L. Dillon against the United States Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother & Hughes,* for plaintiff in error.

*Cook, Litz & Harman* and *G. W. Howard,* for defendant in error.

LYNCH, JUDGE:

Lon L. Dillon, aged sixteen years when employed by defendant, by his next friend brought trespass on the case for injuries received while engaged in performance for defendant of services other than those previously assigned to him and which prior to the injury had been performed by him pursuant to his contract of employment. For reversal of a judgment for $9000 rendered on the verdict of a jury, defendant, on writ therefor, assigns numerous errors.

Though in the petition for the writ defendant complains of rulings upon demurrer, it does not in argument point out any defects in the declaration; and it seems sufficient as to the second and third counts, adjudged good by the trial court.

The cause averred in the second count, in brief, is that, although the work assigned plaintiff as his regular employment—the oiling of mine cars, separating slate and bone from the coal as it passed over the bone table at the tipple at the mine, and carrying samples of coal to defendant's offices for inspection—and which he was competent and had sufficient skill and experience to perform without risk to his personal safety, was not hazardous, defendant required him to engage, without warning or instruction, in other perilous and dangerous work, in the performance of which he was unskilled and incompetent, of which defendant had notice, whereby, and without fault on his part, he received the injury sued for.

The third count averred, in detail, defendant's ownership of a railroad track, connected by switches, operated as part of its mining facilities in conjunction with its coal tipples and dumps; the shifting of cars thereon, the method employed in the operation of the cars on the tracks, and the character of the rails used in the construction and operation thereof; that the ends of the adjustable switch rails originally were, or by use had become, flattened "to a sharp feather edge and pointed away from the coal tipple"; that the custom was to couple and push several cars together, called a "trip",

and, when so coupled, only a narrow space remained between the cars, into which space the employees, required to move the trip towards the tipple or dump, ordinarily entered and pushed with their backs against the forward car; and that plaintiff, though not employed for that work, and not being competent nor having sufficient discretion or skill therefor, was, without warning or instruction, required by defendant to engage, in the same manner, in pushing a trip, whereby, and without fault on his part, he was injured.

The causes so averred are, in the main, sustained by full and competent proof. They are controverted in part only. Indeed, the only disputed fact is whether plaintiff voluntarily, or upon the direction of T. A. Wood, defendant's superintendent, engaged in helping move the trip of cars.

Though in its petition relying on many alleged erroneous rulings, defendant in argument relies only on those hereafter mentioned and discussed. Except as to rulings upon instructions, and as to the amount assessed as damages, the vital questions may readily be confined within narrow limits.. The one reaching the real merits of the case is, did plaintiff, who when injured was over fourteen years of age, presumptively have sufficient capacity to appreciate and comprehend the dangers incident to performance of the duties specially required of him, and to know the safest manner of avoiding injury from them?

Plaintiff had begun work at defendant's coal mine eighteen days before the accident. As stated, his general employment was oiling mine cars, separating slate and bone from the coal as it passed over the bone table through the tipple to the place of loading on cars for shipment, and, at a certain hour each day, carrying samples of coal to Gary for inspection by defendant's officers and agents. According to his testimony, he was, on the morning of the injury, occupied in warming or melting "grease" preparatory to oiling the cars, pursuant to the direction of Anderson Dillon, his cousin and the tipple boss, under whose immediate control he worked. That duty being performed, Anderson Dillon directed him to resume his place at the bone table, when, if plaintiff's testimony is true, Wood, the general superintendent of the mine, ordered him to proceed to the assistance of other employees

engaged or about to become engaged in pushing towards the coal dump a "trip" of mine cars standing on the side-track used in operating and shifting the cars. He says that he and Wood both hurried to that point, when the latter directed him "to get in and push", plaintiff interpreting the direction to mean a command to do as defendant's other servants did or were doing in the performance of the same service, the "trip of cars" consisting of from six to ten loaded cars; and that, as these men were then standing between the cars and pushing with their backs, plaintiff accordingly assumed the same position, and, upon taking it and in moving backward astride the rail near the switch, he was caught and injured in the manner hereafter described.

After stating his age, that he was "raised on a farm" and "never was about a railroad" or "any public place at all to work any" before his employment by defendant, plaintiff, as a witness in his own behalf, testified: "Well, I went right along up there with Wood, and when he told me to get in there, of course I was in a trot, we were in a hurry to get the cars dropped down; they was a right smart distance from where we dumped the coal. We wanted to drop all the cars down together, so we wouldn't have to walk up there and get them one at a time. I didn't know there was a switch about. I was in a hurry. They never told me, the super (Wood) never had told me there was any danger; and I got in there, you know, pushing back down, just backing up, pushing the cars, and I hung my heel in the switch. Of course if he had told me there was any danger I wouldn't have went in there. * * Well, the next car kept on rolling; it just rolled right on up on me. * * The car was coming on; I didn't have time to jerk my heel out of the switch. The car ran right up on my leg. The fellow next to me threw on the brake. If the car had kept on rolling it would have run up my leg; but he put on the brake, and it stopped the wheels from rolling. The car wheels was on my leg, and the leg was on the rail. The wheels slid, and they and my leg slid together; that is all that kept it from rolling on my body. * * I was pushing backward, because the cars just fit you, you know, come along about your back; and if a person gets up this way (indicating) to push with their hands there

is not room to stretch clean out this way; if a person gets between the cars there is not room to push with their hands; I just turned right around and pushed with my back''. He also said the men pushing with him ''turned around, pushing backward with their backs to the car''; that he did not see the switch, but probably could have seen it, ''but we were in a hurry and I was not thinking of any danger; I didn't think he would put me in there where there was any danger. *   *   The cars were just starting, you know; we were all taking short steps; we were pushing all the cars together; they were all coupled together, about six or eight of them; five or six men were pushing; the track was nearly level, and the cars hard to start.''

Though Wood admits he was present at the time and place of the injury, he expressly denies the statement that he summoned plaintiff to join in such labor. No witness corroborates either of them. They alone testify to that fact, and their statements are directly contradictory. Wood says he had not seen or spoken to plaintiff at any time that morning until he heard him cry out with pain and saw him under the wheels of the car. Apparently, they seemed equally fair and frank, and neither sought to evade or deceive, so far as we can determine, each of them testifying to the fact as he understood it to be.

Except as to the position and situation of the two rails, the track at the place of injury was not materially defective. Witnesses familiar with its condition so state; and none of them say it was unsafe or dangerous for use by one familiar with its situation and condition at that time, or that a duly prudent and cautious man in passing along and over it, even though he were engaged in moving cars in the manner stated, would probably sustain injury. But can we say, as a matter of law, no danger was likely to result to employees unaccustomed to the work performed by plaintiff? While Anderson Dillon does testify he told plaintiff to keep away from loaded coal cars for any purpose, the latter contradicts him. But, if true, Wood was the superior officer in charge of operations at the mine. Anderson Dillon's authority was not supreme. Plaintiff was, therefore, justified in obeying Wood's direction. And what Wood said was more than mere direc-

tion. It was an order, a command, according to plaintiff's testimony.

Under such circumstances, did defendant fail to perform the duty to its servant to warn and instruct, and, if so, was such failure the proximate cause of the injury? Naturally and necessarily, the duty to warn and instruct, and the consequential liability ensuing the failure to perform it, vary somewhat according to the age, intelligence, capacity and skill of the servant and the character of the employment, as does also the application of the doctrine as to the assumption of risks. Where an adult might be deemed to have assumed the risk and waived the master's duty as to safe place and appliance or dangers of the employment, no such assumption or waiver would equally be attributed to an infant. *Turner* v. *Railroad Co.*, 40 W. Va. 676. If an adult servant and the master have equal knowledge of patent dangers incident to the particular employment, the servant, who undertakes it, assumes the risk, if he has sufficient discretion to appreciate such dangers. It is not so, however, where the defects or hazards are latent, and the master is aware, or by reasonable diligence ought to have known, of their existence. In such case, his duty requires him to warn against the dangers, and his failure so to do will impose upon him liability for a resultant injury, though the employee be an adult. The same duty devolves upon the master, even where the hazards are patent, if through youth, inexperience or other cause the servant is incompetent fully to understand and appreciate the nature and extent of the hazard. The master legally can absolve himself from liability for injuries to an infant servant only by warning and instructing him, and not then unless the infant has sufficient intelligence and capacity to appreciate the dangers and to contract in his own behalf. *Giebell* v. *Collins Co.*, 54 W. Va. 518; *Ewing* v. *Fuel Co.*, 65 W. Va. 726. The liability of the master for injuries sustained by an infant servant in the course of his employment depends upon the infant's capacity to comprehend and avoid the incidental dangers, and whether he is fully advised concerning them. His age, between seven and twenty-one years, is only an evidential fact to be considered upon the question of capacity and intelligence. *Ewing* v. *Fuel Co., supra.* In the absence

of such capacity and intelligence, the master can not escape liability on the ground that the injury to the minor was due to accident or the negligence of a fellow servant. *Ewing* v. *Fuel Co., supra.* The duty imposed as to dangers incident to the work and not patent to the infant or of the existence of which he is not advised, or by reason of lack of capacity and experience he can not appreciate or avoid, requires the master to respond in damages for injuries resulting from such dangers. *McCarty* v. *Lumber Co.,* 73 W. Va. 142, 80 S. E. 810.

This court has virtually said that, where a servant, though an adult, is not aware of the risk or danger of an employment, and the master knows or if reasonably diligent ought to know of the danger and fails to warn, and injury results to the servant, the master must respond in damages therefor. *Skidmore* v. *Railroad Co.,* 41 W. Va. 293. A servant who has ordinary prudence, and believes no injury will result from performance of duties specially required of him, may engage in them; and if, while so doing, he suffers injury from a defect in the instrumentality used, he does not lose his right to complain, if not warned by the master, unless he comprehends and appreciates the dangers. *Cement Co.* v. *Luck,* 103 Va. 427, in which it is further said greater care is required of the master in giving warning as to the special work than if the servant was engaged in the regular line of his employment. So, in *Cave* v. *Limestone Co.,* 82 S. E. 1095, we said an adult, who when injured was engaged, without warning, in work outside of his regular employment, was entitled to recover for injuries inflicted. Likewise, in *Michael* v. *Machine Works,* 90 Va. 492, it was that, if a servant is ordered temporarily to work in another department of the master's general business, of such a different character that it can not be said to be within the scope of his employment, he does not, by obeying, necessarily assume the risks incident to the new work; and that, when so placed, where engrossing duties are required of him, he has a right to assume that the master will not, without proper warning, subject him to other and unknown perils from which the work exacted necessarily distracts his attention. Failure of the master so to warn is negligence, for which he is liable in case of injury sustained

by the servant while so engaged. 4 Labatt on Mast. & Serv.
§1362, in effect, says a servant who is directed or commanded
to perform a particular duty, in performance of which he is
injured, may be deemed to have been misled and impelled to
encounter the danger incident to it, and, on that ground, is
relieved from the common law bar based on assumption of
risks. See also *Gartin* v. *Coal & Coke Co.*, 72 W. Va. 405. As
generally these authorities discuss liability for injuries to
adults, it may properly be assumed that a much higher duty
devolved on defendant to protect its minor and inexperienced
servant.

Whether, under the circumstances established by proof, and
the authorities cited as applicable to them, plaintiff had suf-
ficient capacity and experience to comprehend the hazards
of the employment, such as he described, outside of the
regular work assigned to him, and did in fact appreciate the
nature and extent of the dangers and know how to avoid in-
jury therefrom, are, as we said in *Cave* v. *Limestone Co.,
supra,* and *Neil* v. *Timber Co.,* recently decided by this court,
questions of fact for submission to the jury, together with
such instructions as may be deemed proper for their guidance
in reaching a just conclusion on the merits of the case pre-
sented to them. These questions they have resolved by a
verdict, which, not being plainly wrong, can not be dis-
turbed upon this review.

Objection is urged against plaintiff's instruction number 1,
defining the master's duty to warn when required by the
youth and inexperience of a servant, the argument being
based on want of evidence to support it. A sufficient reply
is that plaintiff testified he was not warned, did not know
there was any switch at the place of injury, did not see it,
and that if he had known of its existence and location or its
dangerous character, or had been warned of its existence and
the probability of injury therefrom, he would not have
been injured. This evidence warranted the giving of the
instruction, as it also did the refusal of defendant's instruc-
tion number 1, also complained of.

Defendant also complains that its instructions nine, eleven
and sixteen were improperly refused. Under the decisions
cited, an instruction saying, as number nine did, that, as

plaintiff was over fourteen years old when injured, he must be deemed to have had sufficient capacity to comprehend and avoid the dangers incident to the employment, is erroneous. The more vital, and the decisive, question was whether plaintiff, although he may have possessed such capacity, did in fact, in the absence of warning or instruction, appreciate the dangers and know the safest means of avoiding them. When read in view of the facts on which it is based, *Wilkinson* v. *Coal & Coke Co.,* 64 W. Va. 93, cited by defendant, does not sustain the proposition stated. The question in that case was whether the boy employed to operate chock blocks on an incline, had sufficient skill and understanding to perform properly the service required, on which depended not his own safety, because he was not injured, but the safety of other employees necessarily imperiled by his lack of skill in performance of the work assigned to him. The person who was thereby injured, and not the alleged incompetent servant, sought recovery. In other words, it was of the negligent employment of an incompetent minor servant the court was speaking; while here is involved a lack of ability and skill to comprehend and avoid dangers from which the servant himself was injured through lack of warning of the perils of the employment. Instruction number 16 re-states, though somewhat more in detail, the same proposition embodied in number 9, and was not improperly refused, for the same reason. It does not state a correct legal proposition. If true, a master would not be liable to any minor servant, under any circumstances, where the danger is patent to an adult and is "out in the world in broad daylight". Besides, what has been said as to number 9 applies in some degree to this instruction.

Defendant's instruction number 11, if given, would have told the jury that if on more than one occasion plaintiff had been at the place of injury, and could easily and readily have seen the switch, he can not excuse his want of knowledge of its existence "by stating he did not know it was there and had not noticed it". The conclusion drawn does not necessarily follow from the premises. No witness stated plaintiff had any knowledge of the switch, or saw it, or by the exercise of reasonable diligence could have anticipated its dangerous

position and character when concealed by coal cars standing on and over it. The cars evidently were close together, with scarcely room enough between them to observe the location of the switch or the loose end of the switch rail, or that his foot would catch between it and the permanent rail and drag him down and under the cars. And, even if he observed the situation of the two rails, his view was not then limited by the presence of the cars. He saw them, if at all, when the track was not in use; and, although an adult might have entered between the cars at his peril, it can not be said a boy sixteen years of age would or ought to have anticipated any danger from following the example of the men engaged in a like service.

Defendant criticises as excessive the amount ascertained as damages. But, as clearly appears, the injuries were serious, and, to some extent, permanent. Plaintiff's injured leg is now shorter than it was before the accident. His foot was mashed, the bone of the leg broken, the flesh lacerated and torn from it, twenty-seven pieces of the bone protruded and were removed from it; and evidently, and unavoidably, he must have suffered grievous pain from that time to the present, and he is still suffering pain from it. The surgeon who attended him described the injury as a compound fracture, with extensive laceration of the tissues upon the ankle and knee. He states that the bone was broken and exposed; that there is still anchylosis or stiffness in the ankle joint, and that in his opinion the ankle will always be stiff. As to the probability of any physical adjustment of the present difference in the lengths of plaintiff's legs, he said: ''The fracture—the injury—is about the middle of the long bone, and the growth is from the upper fourth and the lower fourth of the long bone—what we call epiphysis. While he is a young boy—I do not know his age—after he matures it should not be comparatively as short as it is now''. He also testified that at times he thought it would be necessary to amputate plaintiff's leg; that he suffered excruciating pain, and at times he thought it would be impossible to save his life even by an amputation, and that he yet frequently dresses the leg; that the bone was badly mashed and splintered, parts of it disintegrated and were thrown off in the process of healing.

Under such circumstances, while the judgment is indeed large in amount, we can not say it is so grossly excessive as to warrant reversal for that cause alone. *Goshorn* v. *Mold & Foundry Co.,* 65 W. Va. 250; *Ewing* v. *Fuel Co.,* 65 W. Va. 726; *McCarty* v. *Wood,* 73 W. Va. 142, 80 S. E. 810; *Farish* v. *Reigle,* 11 Gratt. 697. See also the exhaustive notes on excessiveness of verdicts in actions for personal injuries, appended to *Ruck* v. *Brewery Co.,* 26 Ann. Cas. 1361, and *Railway Co.* v. *Hadley,* 16 Id. 8.

The views we have expressed lead to affirmance of the judgment complained of.

*Affirmed.*