## MINNIE RICKERT v. JOHN STEPHENS ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 13, 1890—Decided March 24, 1890.

In an action to recover damages for the death of plaintiff's husband, charged
to the negligence of defendants, the evidence failing to show that a boy,
under 14 years of age, who neglected to signal the engineer, was incom-
petent therefor, or that the defendants were negligent in employing him,
but disclosing, on the other hand, that the boy's duties required no skill
or judgment and had always been performed by boys, in the knowledge
of the deceased, and that the latter was chargeable with contributory
negligence, it was not error to enter judgment of nonsuit.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WIL-
LIAMS, JJ.

No. 234 January Term 1890, Sup. Ct.; court below, No. 46
August Term 1889, C. P.

On August 17, 1889, Mrs. Minnie Rickert brought trespass
against John Stephens, John S. Jackson and others, partners
as Stephens, Jackson & Co., to recover damages for the death
of plaintiff's husband, charged to the alleged negligence of the
defendants. Issue.

At the trial on November 20, 1889, the plaintiff's case hav-
ing closed, the court on motion entered judgment of nonsuit,
with leave, etc. A rule to show cause why the judgment should
not be vacated having been argued, the following opinion was
filed, SCHUYLER, P. J.:

At the time of the accident which has given rise to the pres-
ent suit, the defendants owned and operated an extensive slate
quarry in this county. The quarry was about a hundred feet
deep, and, to remove the rubbish, as it accumulated from time
to time in the bottom of the quarry, heavy boxes were used,
which were raised and lowered by means of derricks placed on
the banks of the quarry and worked by steam power. The
operation of the derricks was regulated by signals, consisting
of motions with the hands and arms, given by some one at the

bottom of the quarry to a person stationed on the bank, whose duty it was to repeat the signals to the engineer. On the occasion in question, the husband of plaintiff was employed in the quarry, when a descending box struck him with so much force as to cause almost instant death. The plaintiff now seeks to recover damages for the death of her husband, alleging that it occurred through the negligence of the defendants.

It is not pretended that the defendants had any direct connection with the accident, but the right to recover is placed on other grounds. When the accident happened, the person on the bank attending to the signals was William Jackson, a boy only thirteen years and four months old. The theory of the plaintiff is made up of four distinct propositions which may be stated as follows: 1. This boy Jackson caused the accident by motioning to the engineer to lower the box, without first receiving a signal from the bottom of the quarry, which was negligence on his part. 2. He was employed by the defendants. 3. He was incompetent to fill so responsible a position; and 4. The defendants, in employing such a boy to fill such a position, were guilty of negligence. The plaintiff contends there was sufficient evidence to have justified the jury in finding each one of these propositions in her favor. If this is so and there is nothing more, then we committed error in directing a nonsuit to be entered. How is the fact?

Passing by, for the present, the question as to the negligence of the boy Jackson, let us inquire whether there is any evidence to support the second proposition; that is, that Jackson was employed by the defendants. The undisputed fact is that the "regular motioner" was another boy by the name of Jacob Fisher. Fisher was at his post during the forenoon of the day of the accident, which happened in the afternoon. Why Jackson was there in the afternoon, and Fisher was not, does not appear. So far as the evidence discloses, it may have been the result of a friendly arrangement between the two boys. True, one witness testifies that during the previous two or three years Jackson had been "frequently" there, giving signals, but that may be accounted for by attributing it to the same accommodating spirit on his part. One thing is certain, there is no evidence that Jackson was on the pay-roll of the defendants, that they ever either directly or indirectly employed him, or that

they ever saw or heard of such a boy. If the defendants did not employ Jackson, it is too plain for argument that the plaintiff cannot recover. It is a grave charge that the plaintiff brings against these defendants, being no less than that they are responsible for the death of her husband. She must see to it, therefore, that no link in her chain of proofs is left incomplete, and the proofs at all points should be full, clear and satisfactory.

But the point we have been considering is far from being the only weak point in the plaintiff's case. Let us next examine her third proposition; that is, that the jury would have been justified in finding, from the evidence, that the boy Jackson was incompetent. No witness swears that he was incompetent, but the jury were to be asked to infer his incompetency from the nature of his employment, in connection with his age. As far as seen, there was nothing in the duty to be performed which a boy of thirteen might not do as well as a full grown man. There is some evidence, however, that when a box is being lowered into the quarry, if no motion to stop is given from below, the motioner on the bank must stop it "according to his best judgment." The learned counsel for plaintiff lay great stress upon this part of the motioner's duty, contending that the presumption is that children under the age of fourteen are without either judgment or discretion, and that therefore Jackson was prima facie incompetent. We know of no such presumption on the civil side of the court.

There are many kinds of age presumptions known to the law, but the particular presumptions just referred to, we think it will be found, are recognized only by the criminal courts, and even in these courts "the capacity of doing ill, or contracting guilt, is not so much measured by years and days, as by the strength of the delinquent's understanding and judgment, for one lad of eleven years old may have as much cunning as another of fourteen:" 4 Bl. Com., 28. And in State v. Guild, 5 Halst. 163 (18 Am. Dec. 404), we have the case of a boy of twelve years who was not only convicted, but sentenced and executed for murder. We make these citations to show how lightly the presumption under consideration is held even in the criminal courts which gave it the only life it has. It is an absurd presumption at best, and ought not to be extended into new fields without clear authority.

With this presumption out of the way, there is absolutely nothing left for the charge of incompetency to rest upon. Jackson was examined as a witness and certainly exhibited no lack of intelligence for a boy of his age. His duties, as has been seen, were of the simplest character, unless we except the judgment required in lowering the box, and there is no evidence that even that was beyond the capacity of a boy thirteen years old. If it had been the custom to employ men, or even boys above the age of fourteen, to perform these duties, it would have been easy to produce the proof, and the plaintiff having failed to do so must face the inference that the custom is the other way. Of course, if Jackson was competent, the plaintiff's fourth proposition must fall to the ground.

If the only question at the trial had been whether Jackson's carelessness had caused the accident, it is possible that it would have been my duty to submit that question to the jury, although the evidence bearing upon it was far from being clear or satisfactory; but even if the jury had so found, that standing alone would not have helped the plaintiff. If the lowering of the box without a signal from below was the proximate cause of the accident, then we have presented the ordinary case of the negligence of a fellow servant, unmixed with the question of competency; for disobedience of orders is not confined to boys under fourteen. Moreover, the gravamen of the plaintiff's complaint is not that Jackson was careless, but that he was incompetent. Indeed, the two terms are inconsistent with each other. Again; if the proximate cause of the accident was the failure to stop the box at the proper place, through a defect of judgment on the part of Jackson, surely it was incumbent on the plaintiff to show in what particular the defect of judgment manifested itself.

John Fisher testifies that when a box is lowered into the quarry, "the man down at the bottom shows how he wants it, and just as he reaches up the boy has to stop it;" that is, he motions to the engineer to stop it. From this it is argued that when the box is lowered without a signal from below, it is the duty of the motioner on the bank to use his "best judgment" to stop the box at a point within reach of, but where it cannot injure the men at the bottom. The inference is not a necessary one. Besides, if any such rule existed it was sus-

ceptible of positive proof, and being of the very essence of the plaintiff's case, the jury should not be permitted to guess at it. It must be remembered that it is a part of the plaintiff's theory that Jackson caused the box to be lowered without a signal from below, and that in so doing he violated his duty. It is highly improbable that there was any rule prescribing how the box must be stopped, under such circumstances. There is no evidence of such a rule. The only witness examined on the subject says that the motioner must stop the box according to his best judgment. He does not say that there was a rule of the quarry to that effect; he may have been testifying to his own opinion; nor does he tell us where the box was to be stopped.

But the defendants might safely admit the truth of each one of the propositions on which the plaintiff grounds her right to recover, without present jeopardy at least to the nonsuit entered at the trial, as we are clearly of the opinion that the evidence discloses contributory negligence on the part of the plaintiff's husband. The box does not always descend in the same place, but it is shifted from place to place as required, by changing a contrivance called the "snap-jack" connected with the derrick. The snap-jack is changed by the engineer in obedience to signals from below, as in the case of raising and lowering the box. Immediately, or soon after the snap-jack is changed, the box descends. It was much mooted at the argument whether, after the snap-jack is changed, the box descends without further signal; but we think that immaterial, as the signal, if given, is not for the protection of the men at the bottom, any one of whom it seems may give it without notice to his fellow-workmen. On the occasion in question, the signal to change the snap-jack was given by the deceased, who as soon as it was given, walked to the very spot where he met his death, and was busy with his work when the box came down upon him. He knew the box was descending, or about to descend; he knew he was entitled to no notice of its descent; he could not tell exactly where it would descend, and yet he goes on about his work without looking out for the box, and apparently without a thought of the impending danger. It is impossible to distinguish the present case in principle, so far as the doctrine of contributory negligence is concerned,

from Brossman v. Railroad Co. [113 Pa. 490], and Stoneback v. Thomas Iron Co. [17 W. N. 295], in both of which cases we directed compulsory nonsuits with the subsequent approval of the Supreme Court. Motion denied.

—Thereupon the plaintiff took this appeal, assigning the refusal of the court to take off the judgment of nonsuit for error.

*Mr. T. F. Emmens* (with him *Mr. A. Brown Longaker*), for the appellant.

As to weight to be given plaintiff's evidence, on motion for nonsuit, counsel cited: Maynes v. Atwater, 88 Pa. 497; Miller v. Bealer, 100 Pa. 583; McGrann v. Railroad Co., 111 Pa. 171; Jones v. Bland, 116 Pa. 190; Penna. R. Co. v. Horst, 110 Pa. 226. As to negligence on the part of the defendants: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Huyett v. Railroad Co., 23 Pa. 373; Phil. etc. R. Co. v. Spearen, 47 Pa. 305; Lackawanna etc. R. Co. v. Doak, 52 Pa. 381. That the question was for the jury: Lackawanna etc. R. Co. v. Doak, 52 Pa. 381.; McCully v. Clarke, 40 Pa. 406; Strawbridge v. Bradford, 128 Pa. 200; Cleveland etc. R. Co. v. Rowan, 66 Pa. 393; Penna. Canal Co. v. Bentley, 66 Pa. 30; Penna. R. Co. v. White, 88 Pa. 327; Arnold v. Railroad Co., 115 Pa. 139; Schum v. Railroad Co., 107 Pa. 8.

*Mr. Henry W. Scott* (with him *Mr. Edward J. Fox*), for the appellees.

As to the burden of proof upon the plaintiff, counsel cited: Mansfield Coal etc. Co. v. McEnery, 91 Pa. 191; Frazier v. Railroad Co., 38 Pa. 104; Shear. & Redf. on Neg., § 192; National Tube Works v. Bedell, 96 Pa. 179; Lehigh etc. Coal Co. v. Hayes, 128 Pa. 294; Lehigh V. Coal Co. v. Jones, 86 Pa. 439; Frazier v. Railroad Co., 38 Pa. 104; Green etc. Pass. Ry. Co. v. Bresmer, 97 Pa. 107.

PER CURIAM:

The court below did not err in ordering a judgment of nonsuit. The appellant, upon her own showing, had no case. The evidence fails to disclose any evidence of negligence on the part of the defendants. There was nothing to show that the boy, Willie Jackson, was not competent to give the signals

to the engineer, nor that the defendants were guilty of negligence in employing him. It was true he was under fourteen years of age, yet his employment called for no skill or judgment. His duties were automatic; he was merely to repeat signals to the engineer which he received from the workmen in the quarry. It was in evidence that this work had always been performed by boys, and that this particular boy had frequently acted in this capacity before, of which the deceased had knowledge. The risk the latter assumed was one of those which are incident to his employment, and of which he had full knowledge.

Aside from this, we are of opinion that the death of the deceased was the result of his own negligence. The learned judge below said, upon the motion to take off the nonsuit: "On the occasion in question the signal to change the snapjack was given by the deceased, who, as soon as it was given, walked to the very spot where he met his death, and was busy with his work when the box came down upon him. He knew the box was descending, or about to descend; he knew he was entitled to no notice of its descent; he could not tell exactly where it would descend, and yet he goes on about his work without looking out for the box, and apparently without a thought of the impending danger."

Judgment affirmed.