MICHAEL F. SULLIVAN vs. WILLIAM J. LALLY & another.

Suffolk.　March 11, 1896. — May 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Minor — Negligence — Due Care.*

Where a boy fifteen years and four months old, possessing so far as appears the average intelligence of boys of his age, is injured by the starting of an elevator by another employee under circumstances which disclose no negligence on the part of the employer or his superintendent, an action against the employer for the injuries cannot be maintained.

TORT, for personal injuries occasioned to the plaintiff while in the defendants' employ. The declaration contained three counts, the first at common law, and the second and third under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Maynard*, J., who, at the close of the testimony for the plaintiff, directed the jury to return a verdict for the defendants; and the plaintiff alleged exceptions, in substance as follows.

The defendants had in their building in Boston a freight elevator which ran from the basement to the top story of the building, was enclosed in a brick shaft, and had openings at the basement floor and on the different stories. It consisted of a square platform with upright beams in the four corners, and was, with the exception of the beams, entirely open and unguarded on all sides, the space between the side of the platform and the brick shaft being about three inches in width. It was operated by a continuous rope, which ran between the side of the platform and the shaft.

The plaintiff testified that, at the time of the accident, on September 23, 1893, he was fifteen years and four months old; that he entered the defendants' employment on March 11, 1893; that he was employed at the outset by one Lawson, whom the evidence showed to be the defendants' superintendent within the meaning of St. 1887, c. 270, and who the day after he came directed him to use the freight and not the passenger elevator in going to the upper floors; that several weeks before

the accident Lawson also requested him to run the freight elevator on occasions when the man in charge was at dinner; that up to this time he had never operated any kind of an elevator, and had received no instructions as to running this elevator; that up to three days before the accident he ran it five or six times during the noon hour, whenever any one called out, which was the only way by which to signal for the elevator; that by Lawson's direction, on the third day before the accident, he ran the elevator in the afternoon; that on the second day before the accident he ran it about three hours, morning and afternoon; that on the day before the accident, by Lawson's direction, he ran it mostly all day in company with a man who had been hired that morning; and that, in his judgment, the elevator would go from the basement to the top of the building in about forty seconds, and the ordinary pull required to start it was a pull from his shoulder to his waist.

The plaintiff further testified that on the morning of September 23 he saw the freight elevator in charge of one Kerin and a new man named Brown; that about 10.30 in the morning, by request of Lawson, he went on the elevator with Brown, and remained there until the time of the accident, running the elevator and answering calls, which were sometimes fifteen, sometimes thirty an hour; that he ran the elevator more frequently than Brown, because he was showing Brown how to run it; that when he went on the elevator he did not know what previous experience Brown had had in running an elevator, and that no instructions were given him in reference to teaching Brown; and that at about half past three in the afternoon the plaintiff and Brown were on the elevator, which was at rest at the first floor, Brown being at the guide rope and the plaintiff in the corner diagonally across from him, leaning against a beam of the elevator, twelve inches wide, tying the lacing of his slipper, they having then been waiting about five minutes.

The plaintiff then testified as follows: " I was standing at this place, with my right leg up, fixing the slipper. Brown's back was turned to me, and I was looking to Brown. My side was turned to Brown and Brown's back to me. He started the rope, and the elevator gave a jump, threw me out on my side," and the accident occurred.

On cross-examination, the plaintiff testified that all he knew about running the elevator was to pull the rope, and stop and start it, and that this was all there was about running it; that after an hour's time he knew that that was all there was to do with the elevator, and that was what he tried to show Brown; that all the plaintiff was told to do was to start and stop it; that, if the rope was pulled a little harder, the elevator would jerk, would go up about a foot, settle back, and start again; that he was on the elevator in all about twelve times; that at the end of the first hour he knew perfectly well how to start and stop it, though he could not run it fast in the first hour; that a pull of eighteen to twenty inches was required to start it; that of the twelve times he ran it about an hour each time, and the remaining three times for six or seven hours at a time; that the accident happened because Brown started too quick; that he heard no call whatever; that he knew he was liable to be called; that he had shown Brown how to start and stop the elevator, but Brown could not stop at the right place, and used to pull too hard, although he did not do this all the time, but quite often; and that the elevator ran all right except for that jerking movement, which happened, as the plaintiff noticed, whenever the rope was pulled hard.

*W. M. Stockbridge*, for the plaintiff.

*J. Lowell, Jr.*, (*S. H. Smith* with him,) for the defendants.

MORTON, J. It does not appear that the plaintiff did not possess the average intelligence of boys of his age. There was nothing unapparent or complicated about the elevator or its operation. The plaintiff testified that he knew all there was to do with the elevator, and no reason is disclosed why he should not have known it, though he was only fifteen years and four months old at the time of the accident. He knew that Brown was a green hand, and even a boy must know, we think, that green hands are liable to do things which experienced ones would not. The accident appears to have been caused by the manner in which Brown started the elevator, and about which the plaintiff had previously instructed and cautioned him. We do not think that the evidence discloses any negligence on the part of the defendants or their superintendent. *Coullard* v. *Tecumseh Mills*, 151 Mass. 85. *Henry* v. *King Philip Mills*, 155 Mass. 361.

*Exceptions overruled.*