# CHARLESTON

Wilkinson, Admr., v. Kanawha & Hocking Coal & Coke Co.

Submitted March 6, 1908.    Decided March 17, 1908.

1. **Master and Servant**—*Injury to Servant—Pleading and Proof.*

    The declaration charged it was defendant's duty to have a careful and competent person "to operate the knuckle where the cars were let down from the mine entry to the tipple below," but that, not regarding such duty, it employed "a totally incompetent and irresponsible boy of the tender age of fifteen years to operate said knuckle and levers necessary to operate said knuckle in letting down said cars off the hill." The evidence showed the word "knuckle" was sometimes used as an inclusive term, to embrace the drum-house and all appurtenances at the head of the incline, but that the boy was employed simply to operate the chock-blocks immediately at the knuckle, and that he was fifteen years and 4 months old. The word "knuckle" was employed in the declaration in its restricted sense. There was no material variance. (pp. 96, 97.)

2. **Negligence**—*Infants—Discretion—Presumptions.*

    An infant, after reaching the age of fourteen years, is presumed to have sufficient discretion and understanding to be responsible for his wrongs, to be sensible of danger and to have power to avoid it. (p. 97.)

3. MASTER AND SERVANT—*Incompetency of Minor—Burden of Proof.*

   As a general rule, after a boy has reached the age of fourteen years, courts do not permit juries to presume him incompetent for the duties of a particular employment, because of minority alone; and when over that age, the burden of proof is upon the one alleging incompetency.   (p. 98.)

4. SAME—*Incompetency of Servant—Evidence.*

   A jury can not decide a person unfit for his employment on account of what they see or suppose they see or can read in his face and manner while testifying before them.   (p. 99.)

5. SAME.

   A case where the evidence failed to establish incapacity of a minor employed over fifteen years of age, and negligence in his employment and retention.   (p. 100.)

6. SAME—*Employment of Incompetent Servant.*

   The fact that other servants are competent will not excuse a master in employing an incompetent person to perform a particular service, although in conjunction with such competent fellow-servants.   (p. 101.)

Error to Circuit Court, Kanawha County.

Action by William B. Wilkinson, administrator, against the Kanawha & Hocking Coal & Coke Company.  Judgment for plaintiff and defendant brings error.

*Reversed, and New Trial Granted.*

BROWN, JACKSON & KNIGHT, for plaintiff in error.

E. B. DYER and J. W. KENNEDY, for defendant in error.

MILLER, JUDGE:

The coal from defendant's mine number 117 at Glen Ferris in Fayette county is brought out on cars of two tons capacity, drawn by mules, over tracks distributed through the mine and extending out over a horizontal plane, whence the cars are let down in pairs over parallel tracks built upon an incline to a tipple at the railroad below, a distance of twelve hundred feet.  The point at which the inclines begins is called the "knuckle," from its resemblance to a bent finger.  The mechanism employed to lower the loaded cars and elevate the empty ones consists of a large drum, around which is wound a wire rope in opposite directions, the weight of the loaded cars on one track pulling the empty

ones up on the other, their movement being regulated by a brake, controlled by one designated as drum-runner. At the knuckle is a mechanism designed to prevent the loaded cars brought out of the mine from going over the knuckle until the drum rope is attached. This consists of iron "chock-blocks" three feet long, three inches wide and five inches high, one for each rail of the double track, operated on pivots and so connected that they can simultaneously be thrown over the rails by means of one lever. The device is simple and requires no special skill to operate it. The operator is designated as chock-block tender. The lever for this device is located on one side of the double track, and that of the drum-runner on the opposite side, and both located within what is called a drum-house. The drum itself is located some distance behind the drum-house, and in front of it a hitching-post so-called. When the loaded cars are brought out of the mine into the drum-house and run down against the chock-blocks, the rear car, coupled to the front one, is tied to the hitching post by use of a grass-rope: and the end of the wire rope is attached to it also. When the cars are ready to descend the chock-block tender, upon signal from the drum-runner, opens the blocks by use of the lever, and the cars are eased off by means of the grass rope in charge of one man, until the slack of the wire rope is taken up, and it is the duty of the chock-block tender, immediately after the empty cars come up over the knuckle, to close the blocks behind them. There are thus four persons employed in this operation—drum-runner, chock-block tender, hitching-post man, and the man who attaches the ropes to the cars. They each have other duties to perform about the work besides the special ones referred to, in taking the empty cars back to the mine and bringing the loaded ones forward to the knuckle. The tipple at the foot of the incline is in charge of a weigh-master, whose duty it is to weigh all coal dumped there. Others are employed at the tipple also not necessary to mention.

On November 9, 1903, the defendant had employed as chock-block tender Leonard Lloyd, a boy of fifteen years and four months of age. He had been then employed about three days, but had performed faithfully and successfully

the duties of his position, without complaint or cause of complaint so far as the record shows, up until four o'clock of that day, when two empty cars on the incline jumped the track just as they were coming up over the knuckle, and, before the chock-block lever could be operated, had to be gotten on the track and removed off the knuckle. This required the assistance of all employees at that point, including Lloyd, for some four or five minutes. After they passed the knuckle, all assisted in pushing them on towards the opening of the mine. Lloyd in the exigency forgot to throw the chock-block over the track, and about the same time two loaded cars from the mine, brought into the drum-house by the drum-runner, who failed to observe that the chock-blocks had not been thrown over the track, escaped over the knuckle and down the incline to the tipple, where they struck the plaintiff's intestate, Edward P. Wilkinson, the weigh-master, and two other employees, resulting in the almost instant killing of each. It was to recover damages for the death of Wilkinson that this action was brought by his administrator.

The declaration, in one count, by way of charging the defendant's duty and breach thereof, avers that it was the duty of said defendant to have a careful and competent person "to operate the knuckle where the cars were let down from the mine entry to the tipple below," but that, not regarding such duty, it employed "a totally incompetent and irresponsible boy of the tender age of fifteen years to operate said knuckle and levers necessary to operate said knuckle in letting down said cars off the hill," knowing that said boy was incompetent to perform said work; it further avers that certain loaded coal cars were permitted, through the incompetency of said boy in operating said knuckle, to run down the incline and kill the plaintiff's intestate. On the trial, there was a verdict and judgment for the plaintiff for $5,500. For alleged errors committed by the trial court, the defendant has brought the case here for review.

First, it is claimed there is a fatal variance between the declaration and the proof. The argument on this point is that, as the evidence disclosed, the term "knuckle" is frequently used as an inclusive term, embracing the drum-

house and all appurtenances at the head of the incline, and was sometimes so employed by the witnesses in their testimony, and that it was in this sense the pleader intended to use it in the declaration. But we do not think the point meritorious. The declaration clearly distinguishes between the operation of the drum and that of the knuckle, and the negligence charged relates to the employment of the boy to operate the knuckle. At the knuckle, according to the testimony, the boy was in fact employed; and we perceive no substantial variance between the *allegata* and *probata* in this respect. Another point of alleged variance is that the declaration charges the boy to have been fifteen years old, whereas the proof showed he was fifteen years and four months old. We see no merit in this point. It is customary to speak of one's age as of his last birthday. This is the common meaning of the word. In life insurance contracts, the rule is to refer the age to the nearest birthday; and it would be most unusual in a declaration of this character to charge the age with literal accuracy as to months and days.

The motion of the defendant to exclude the plaintiff's evidence, the questions presented by its instructions 1, 5, 7 and 8, all refused, and the errors relied upon, all depend on the sole question, in its various phases, whether the defendant was guilty of negligence in employment of Lloyd as chock-block tender. Instruction number one told the jury that the evidence would not support a verdict for the plaintiff; number 5, that if they found Lloyd "was smart and bright, of strength adequate to the performance of the duties of his employment, was instructed in the performance of those duties, and knew what would be the natural consequence of a failure to perform those duties," his employment was not negligence; number 7 was practically of the same import, except that it took into account the previous experience of Lloyd in working about mines; number 8 took into consideration the facts supposed in 5 and 7, and told the jury that if they believed from the evidence Lloyd was placed under the direct supervision and subject to the orders of the drum-runner, who was experienced, skilled and competent and whose duty it was to see that Lloyd and the other helpers performed their respective duties, and that the conditions of

the work were such that the drum-runner could see that his respective helpers, including Lloyd, performed their duties, then the defendant was not negligent in employing Lloyd, although he was without previous experience.

It is conceded that, in an action of this kind, the burden is upon the plaintiff, as a condition of recovery, to prove not only incompetency of Lloyd, but also negligence in his employment and retention; and if he has failed in this, defendant's instructions 1, 5, 7 and 8 clearly should have been given. The evidence of the defendant stands uncontradicted, and Lloyd as a witness for plaintiff admits, that at the time of his employment he was instructed in the duties of his position; and that these duties, which were simple, consisting simply of opening and closing the blocks by the operation of a lever, had been performed successfully up to the hour of the accident. That he had physical strength, intelligence and discretion necessary to properly operate these blocks was practically demonstrated. That he was negligent, as it seems were all the other employees, in not seeing that the blocks were closed before the loaded cars ran down over the knuckle, is admitted; but such negligent act does not establish incompetency on his part.

The plaintiff claims to have discharged the burden of proof by evidence of Lloyd's age, his previous inexperience in operating chock-blocks, his appearance on the witness stand, his height of five feet and weight of only one hundred and ten pounds, together with the character of his testimony on cross-examination. There were no other facts proven from which it is even claimed the jury were justified in their finding of negligence.

As tending to show Lloyd's competency, the undisputed evidence was that he had been employed about the mines from the time he was 10 years old, under his father, an experienced mine foreman; had helped mine coal, grease and couple cars; had been employed as "trapper" in tending the doors in the mines controlling ventillation; has "spragged" cars, involving the running alongside moving cars in the darkness of the mine and sticking in the revolving wheels pegs to chock or "sprag" them; had thrown the switches on the parting in the mine, the place where loaded cars are as-

sembled to be taken to the outside and to which empty cars are brought back for distribution. Some evidence tends to show that the mine foreman, at the time he employed Lloyd, though living for some time theretofore in the same house with him, did not know of this previous experience. But certainly if Lloyd was competent, the fact that the foreman neither knew of this previous experience nor made inquiry on the subject could not render the company liable; if incompetent, failure to make investigation would of course be actionable negligence.

Let us see now whether, under the authorities, the alleged evidence of incompetency was such as to justify the submission of that question to the jury. If so, we would not be justified in disturbing their verdict.

First, with respect to the age of the boy. It is conceded that, by common law, an infant after reaching the age of fourteen years is presumed to have sufficient discretion and understanding to be responsible for his wrongs, to be sensible of danger and to have power to avoid it. *Nagle* v. *Railroad Co.*, 88 Pa. 35; *Molaske* v. *Coal Co.*, 86 Wis. 226; *Rickert* v. *Stephens*, 133 Pa. 538. Our statute recognizes this common-law capacity, in providing by section 4, chapter 82, Code, that if above that age he may nominate his own guardian, and, by section 3, chapter 83, that when his land is to be sold by the proceedings there prescribed he shall, if over fourteen, answer the bill on oath in proper person. Moreover, by section 13, chapter 15*h*, Code 1906, coal companies are permitted to employ as workmen in the mines boys twelve years of age. It has been held, however, that statutes of this character do not raise a presumption of capacity in an infant. *Carlson* v. *Coal & Coke Co.*, 19 Wash. 475. After the age of fourteen, therefore, as a general rule, the courts do not permit juries to presume a boy incompetent because of minority alone. *Sutherland* v. *Railroad Co.*, 125 N. Y. 737; *Sullivan* v. *Lally*, 166 Mass. 265; *Coal Co.* v. *Brownlie*, 60 Ark. 582; *Walkowski* v. *Consolidated Mines*, 115 Mich. 629, 41 L. R. A. 33; *Smillie* v. *St. Bernard*, 47 Mo. App. 402; *Rickert* v. *Stephens*, *supra*. The above authorities hold that, where a boy is over the age of fourteen, the burden is upon the plaintiff to show incapacity; if under that age, the burden of showing capacity is upon

the defendant.   See also *Molaske* v. *Coal Co.* and *Carlson* v. *Coal & Coke Co.*, *supra*.

It is true, however, that "upon the clearest grounds of necessity and good faith, ordinary care, in the selection and retention of servants and agents, implies that degree of diligence and precaution which the exigencies of the particular service reasonably require.   It is such care as, in view of the consequences that may result from negligence on the part of the employees, is fairly commensurate with the perils or dangers likely to be encountered."   *Railroad Co.* v. *McDaniels*, 107 U. S. 454.   It is admitted in this case that the position of chock-block tender was an important one, in view of the danger to life from neglect of his duties; but it is not pretended that these duties required, for proper performance, any special skill or experience.   Any person of adequate strength to work the lever, and of sufficient age and discretion to understand the results of failure to properly and faithfully perform the duties required, would be reasonably suitable for the position.   Accordingly it was held in *Sullivan* v. *Lally*, *supra*, that a boy fifteen years and four months old, of average intelligence, who had run a freight elevator a few times, would not be presumed incompetent to understand the dangers; in *Coal Co.* v. *Brownlie*, *supra*, that a boy fourteen years old, would not be presumed incompetent, by reason of youth, to trap in a mine; in *Burke* v. *Railroad Co.*, 23 N. Y. Supp. 458, that a boy seventeen years old would not be presumed incompetent as a switchman by reason of his youth; in *Walkowski* v. *Consolidated Mines*, *supra*, that negligence is not shown by the mere fact of employing a boy of seventeen to manage a brake controlling passenger cages in a mine; in *Fertilizer Co.* v. *Travis*, 102 Tenn. 16, that mere inexperience in duties involving no great amount of intelligence or skill is not necessarily evidence of incompetency.

In *Sullivan* v. *Lally*, *supra*, the court said:   "It does not appear that the plaintiff did not possess the average intelligence of boys of his age.   There was nothing unapparent or complicated about the elevator or its operation.   The plaintiff testified that he knew all there was to do with the elevator, and no reason is disclosed why he should not have known

it, though he was only fifteen years and four months old at the time of the accident."

In *Smillie* v. *St. Bernard, supra,* where the boy employed to run an elevator in a store was only twelve years of age, the court said:  "Nor was there any evidence whatever that the elevator, owing to its size, construction or propelling power, could not be run with safety to all within by a boy of that age.   There was no evidence whatever that boys of that age. are not usually employed for similar work.   As far as that branch of the case is concerned, it rests on the simple proposition that the boy was twelve years of age, and that his employer might have known the fact, as the boy presumptively indicated it by his appearance, in the absence of evidence to the contrary." In that case the verdict for the plaintiff was set aside, on the ground that the proof was insufficient to establish negligence in employment of the boy.

In *Holland* v. *Coal & Iron Co.*, (Ala.), 12 L. R. A. 233, on the authority of a number of other Alabama cases, the court said.   "The selection of a servant must, of course, be made with a view to the nature of the employment. If it involves special knowledge or experience, only men of special knowledge and experience should be employed. If the work may be well done by the unskilled and inexperienced, it can not be said that the master was lacking in the measure of care he owes to other employees should he employ unskilled and inexperienced men upon it."

It is said in 1 Labatt on Master & Servant 407 that "the fact that the delinquent servant was a minor is an important, though not decisive, element in determining his competency.   Its evidential weight depends upon the character of the work to be done, the servant's previous experience, and his actual age."   In view of what is said in the decisions there cited and others, it is not to. be inferred, however, that the writer means to say that the fact of age alone, when above fourteen, may be submitted to the jury on the question of capacity, but that where, as in those cases, there is other evidence of incapacity, the fact of infancy may be considered as an important one along with the other evidence; for, as well said in *Nagle* v. *Railroad Co. supra:*

"That would furnish us with no rule whatever. It would give a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury. It is a question of law for the court."

Nor will a single act of negligence suffice to prove incompetency. 1 Labatt on Mast. & Serv. 409. This writer says at page 411 that, "in regard to the question whether the plaintiff is entitled to introduce evidence that the delinquent servant had been guilty of several acts of negligence prior to the time of the accident in suit, the courts are not unanimous," although he gives it as his opinion that, by the weight of authority, such evidence is competent on the question of unfitness.

In *Core* v. *Railroad Co.*, 38 W. Va. 456, it is said that "the failure of the fireman to respond to the signals at Raven Rock, the testimony of the conductor that 'the firemen was not known and recognized to be a skilled engineer,' and the accident itself, were wholly insufficient to prove negligence in employing the fireman."

But it is argued here that *Bare* v. *Coal Co.*, 61 W. Va. 28, supports the proposition that, as matter of law, a boy of the age of Lloyd is presumptively incompetent, on account of youth, to fill a position of the importance of chock-block tender. That was a case of injury to the boy himself, and is not opposed to the authorities already cited applicable to injuries to a fellow-servant. Even in case of injury to the boy himself the rule, as stated in that case, is that the case should be taken from the jury "where the clear weight of the evidence shows the child had a capacity for self-protection which he culpably omitted to use, in face of danger which it knew and sufficiently apprehended."

What may be said of Lloyd's appearance and testimony before the jury, as evidential facts of incapacity. The courts, so far as we have been able to find decisions on the subject, hold that a jury is not authorized to decide a person unfit for his employment on account of what they see or suppose they see or can read in his face and manner while testifying before them. *Corson* v. *Railroad Co.*, 76 Me. 244; *Peaslee*

v. *Railroad Co.*, 152 Mass. 155; *Keith* v. *New Haven*, 140 Mass. 175; *Railway Co.* v. *Christman*, 65 Tex. 369; *Core* v. *Railroad Co., supra*. This Court, in the latter case, quotes approvingly *Corson* v. *Railroad Co., supra:*  "If the jury undertook to decide that Arnold was an unfit person to be employed as a brakeman on account of what they saw or supposed they saw or could read in his face and manner while testifying before them as a witness, they did fall into a grave error. As well might a jury find a man guilty of murder because in their opinion they could see guilt in his face. The law does not recognize physiognomy as an art or science sufficiently reliable to found a verdict upon, not even against a railroad corporation. In a case like this the law imposes upon the plaintiff the burden of proving that the defendant corporation has been guilty of negligence in employing a man known to be unfit for the place which he is to fill, and we feel no hesitation in saying that this burden can not be sustained by the man's looks and manner while testifying as a witness."

The following testimony of Lloyd on cross-examination is relied on:  " Q.  You had been around the mouth of the mines, although you had not been there?  A.  Yes, sir, I had been around, not very much.  Q.  You knew what the blocks were for?  A.  Yes, sir, I knew what for, to keep cars from going over the hill.  Q.  You knew if the blocks were not closed the cars would go over the hill and into the tipple?  A.  Go over the hill *somewhere*, I knew that."  Much stress is laid on the last answer, as evincing lack of capacity to appreciate the dangers resulting from negligence. We are unable to concur in this view. We do not see anything in the nature of the testimony to evince lack of competency, or want of appreciation of the dangers incident to neglect. The last answer was guarded; it evinces rather a sense of discrimination than otherwise. When the witness said that the cars would "go over the hill *somewhere*," he meant that if they kept the track they would go to the tipple of course, but if they jumped the track, as the empty cars had done before the accident, they might go elsewhere and never reach the tipple. Clearly this evidence did not show incompetency on the part of the witness to perform his duties.

We think therefore that instructions 1, 5, 7 and 8 should have been given. The first, that the evidence was insufficient to support a verdict for the plaintiff and that the jury should find for the defendant, if given, however, would have rendered the others unnecessary.

As to the other group of instructions refused, numbers 10 and 11, we do not think they are pertinent, and they were properly rejected. They are based on the theory that the drum-runner was foreman and Lloyd and the other men employed at the drum-house were under him. Number 10 tells the jury, on this theory, that, although they might find Lloyd incompetent and unfit for his position and that he negligently left the blocks open on the occasion of the accident, yet if they find that the drum-runner was skilled, experienced and competent, and it was his duty to see that Lloyd performed his duties, and could have seen that Lloyd had left the blocks open before starting to run the loaded cars, and if he had so seen could have prevented the loaded cars from going over the knuckle but failed therein, then they must find for the defendant; number 11 tells the jury, on the same theory, that if they believe that the accident would not have happened except for the negligence, subsequent to the negligence of Lloyd, of another employee or employees skilled, experienced and competent, they must find for the defendant. These instructions were not justified by the facts proven. It is clearly shown that, although Lloyd was employed at the same place with the drum-runner and the other persons referred to, yet he was employed for the distinct purpose of operating the chock-blocks, and charged with responsibility thereof; and it can not be said the other employees had any duty to perform in reference to the blocks, except of a negative character—that is, not to heedlessly run cars over the knuckle when the blocks were open. Nor do we think the defendant could have been excused for incompetency in Lloyd because of any superior authority over him of the drum-runner.

For the reasons assigned, the judgment is reversed, the verdict set asided, and the defendant awarded a new trial.

*Reversed, and New Trial Granted.*