# WHEELING.

Ewing v. Lanark Fuel Company.

Submitted September 8, 1908.   Decided June 11, 1909.

1.  Negligence—*Questions for Jury—Contributory Negligence.*
    Negligence is generally a mixed question of law and fact, and when the evidence is conflicting in relation to the existence of such facts as would show negligence if the facts were undisputed; or when the facts admitted to be true, or clearly proven and not denied, are such that reasonable men might draw different conclusions from them, the question of negligence is for the jury.   The same is also true in relation to contributory negligence which, under the law of West Virginia, is a matter of defense.   (p. 735.)

2.  Master and Servant—*Duty to Warn—Infant Servant.*
    It is the duty of the master to warn his servant of the dangers incidental to his employment, unless they are so obvious that it may be fairly assumed that the servant fully comprehended them.   If the servant is an infant, this duty becomes more imperative.   (p. 733.)

3.  Same.
    Whether, or not, a master is liable to his infant servant for injury received by him in the course of his employment, depends upon the mental capacity of the infant to comprehend and avoid the dangers incidental thereto, and upon the question whether, or not, he was fully informed in relation to such dangers, so as to charge him with having voluntarily assumed the risk of injury.   (p. 733.)

4.  Same—*Injuries to Servant—Infant Servant.*
    Between 7 and 21 years, the age of the infant is only an evidential fact bearing on the question of his mental capacity to comprehend and avoid danger.   (p. 732.)

5.  Same—*Injuries to Servant—Infant Servant—Presumptions.*
    An infant 14 years of age or over, is presumed to possess sufficient mental capacity to comprehend and avoid danger, and if he relies on his want of such capacity the burden of proving it is on him; but if under the age of 14, he is presumed not to possess such capacity, and in an action by him for negligently causing his injury the burden of proving his capacity is on the defendant.   (p. 734.)

6.  Same—*Injury to Servant—Actions—Questions for Jury.*
    Whether, or not, an infant possessed sufficient mental capacity to comprehend and avoid the dangers incidental to his employ-

ment, and whether or not he was aware of his danger and could have avoided it by the use of such care as might reasonably be expected in one of his age, are questions of fact for the jury. If he did not possess such capacity he could not be guilty of contributory negligence. (p. 736.)

7.  SAME—*Injuries to Servant—Infant Servant.*
    The master will not be relieved from liability to an infant for an injury received in the course of his employment, on the ground that the injury was the result of mere accident, or of the negligence of a fellow servant, if the infant did not have sufficient capacity to comprehend and avoid the dangers incidental to his employment. (p. 736.)

8.  SAME—*Knowledge of Servant—Imputation to Master.*
    A servant who is authorized by his master to employ, and to discharge, other servants and to assign their duties, is, to the extent of such authority, the agent of his master; and whatever knowledge he may have of matters pertaining to the ability and capacity of a servant employed by him, to perform a particular kind of work and to comprehend and avoid the dangers incidental thereto, will be imputed to the master. (p. 737.)

Error to Circuit Court, Raleigh County.

Action by Jackson M. Ewing against the Lanark Fuel Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

McGINNIS & HATCHER and PRICE, SMITH, SPILMAN & CLAY, for plaintiff in error.

M. F. MATHENY and SANDERS & CROCKETT, for defendant in error.

WILLIAMS, JUDGE:

Jackson M. Ewing, an infant 13 years and 9 months old, was injured on the 7th day of January, 1907, while engaged in coupling cars in the defendant's coal mine in the county of Raleigh, as a result of which injury his right leg was amputated two or three inches above the knee. He sued the company, by next friend, for negligently causing the injury, and obtained a judgment for $8,000.00. There was a single track leading into the mine for a distance of about 500 feet. At this point it branched into two parallel tracks called a parting. This parting was about 200 feet in length with a space of five or six feet between

the two tracks. From the entrance to the center of the parting it was down grade; then for a short distance it was level, and continuing in the mine, the grade was upward. There was a swag near the center of the parting. This parting was designed for the passing of the cars. The empty cars were hauled into the mine, five or six at a time, coupled together, and each one was "spragged," so as to prevent its rolling down the grade; and all were left coupled together, standing on the grade on the right hand track of the parting. The loaded cars were hauled, one at a time, by mules from the various working places in the mine, and were left standing in the swag on the left hand track of the parting until a train of them, five or six in number, was collected. They were then coupled together. The device for coupling consisted of two or three links forming a short chain each end of which was attached to a car by means of a clevis and pin. The couplings were removed from the train of empty cars as they were hauled into the mine, and were used to couple together the loaded cars.

Plaintiff had been employed on the motor which ran on the outside of the mine; but on the day of his injury the motor was not running, and he was placed in the mine to uncouple the empty cars and to couple the loaded ones. He did this by removing the pin from one end of the coupling, unspragging the car and allowing it to run down the grade. He would then follow the car down the grade, remove the coupling from the car, and attach it to the loaded ones. At the time of his injury, he had let down all the empty cars of the train except one which he supposed was spragged, and while removing the coupling from the one which he had last let down, the last one of the train, from some unexplained cause, ran down the grade, caught him between it and the one from which he was removing the coupling, and crushed his leg.

Defendant took several bills of exceptions to the rulings of the court in giving certain instruction at the instance of the plaintiff, and in refusing certain other instructions asked for by defendant and also in admitting certain testimony on behalf of plaintiff over defendant's objection, and in refusing certain testimony offered by defendant. The case is here upon writ of error awarded defendant.

Plaintiff in error insists that its demurrer to the declaration

should have been sustained; but we think it sufficiently avers a cause of action. The negligence averred is not the particular accident which caused plaintiff's injury; but it is the employment of plaintiff, an infant, and negligently requiring him to perform a duty, the dangers of which he was incapable of comprehending and avoiding, and failing to instruct him how to perform the work, and to guard against the dangers incidental thereto. These averments state a good cause of action. The demurrer was properly overruled.

Plaintiff in error insists that the testimony of John Ewing, plaintiff's father, relative to the growth, development and training of plaintiff, his lack of travel and his incapacity, in his present condition, to earn money, was improper evidence and that it should not have been admitted. The father admitted that he was an illiterate man, unable to write, or even to read, and he may have improperly estimated plaintiff's incapacity to comprehend danger, and to avoid accident and injury, on account of the boy's lack of education. He may not have shown himself very well qualified as an expert to testify on the subject; but the jury was competent to weigh and consider such testimony, and to give to it such value only as it merited, and no doubt did so. Such testimony is of little value; but we fail to see how plaintiff in error could have been prejudiced by it. *Jarrett* v. *Jarrett*, 11 W. Va. 584; *Farnsworth* v. *Noffsinger,* 46 W. Va. 410. The boy grew up in the home of his father and he had ample opportunity to observe his actions; he was, therefore, certainly competent to give testimony concerning the boy's capacity, notwithstanding he may have given a wrong reason for his estimate of it. It is a matter of common knowledge that many illiterate boys are more astute and alert, and are more capable of taking care of themselves when in the presence of danger than many other boys of the same age who have had the advantages of a technical education. No doubt, the jury considered this fact in estimating the father's testimony.

It was not error to permit the father to testify concerning the boy's incapacity to earn money since his injury. *Lawson* v. *Conaway*, 37 W. Va. 159.

The testimony of the boy's father, and of Ben Cary and John Kelly in relation to the father's having told Dave Laing, the mine boss, to keep plaintiff out of the mine, is also objected to.

65 W. Va.

It was not negligence in the company to employ the boy against his fathers will. I Labatt on Mas. and Serv., secs. 18 and 21. The father is not suing for loss of his boy's services, and proof that the defendant in error had sufficient capacity to understand the dangers attending his employment, and that he did in fact so understand them, and that he possessed the ability to avoid them, would be a complete defense, whether the employment was with, or without, the father's consent. But is this not a fact proper to be proven, as tending to show incapacity of the boy, for the purpose of charging plaintiff in error with knowledge of his incompetency to perform the service? It certainly tends to prove that the father thought the work was dangerous, and that he did not regard the boy as competent to perform it; and would be sufficient, at least, to put plaintiff in error on inquiry concerning the boy's capacity, provided it is properly chargeable with knowledge of this conversation. Whether it is chargeable with such knowledge, or not, depends upon the question whether the mine boss was its agent for the purpose of employing plaintiff. For some purposes the mine boss is to be regarded as a fellow servant with other employes, and not agent; and for other purposes he may be the agent of his employer. This depends upon the authority given him. The testimony is that Laing employed, and discharged, men. This testimony is not denied by Mr. Laing, nor by any other witness. It must, therefore, be taken as a fact proven. And, if he had power to employ and to discharge men, it must be inferred that he had power to assign their duties. To the extent of this authority, therefore, he was agent, or vice-principal, of plaintiff in error; and any knowledge which he obtained within the scope of this authority would be knowledge to his principal. 4 Thomp. on Neg., sec. 4955; 1 Sher. & Red. on Neg., secs. 230 and 233; *Criswell* v. *R. R. Co.*, 30 W. Va. 798; *Core* v. *R. R. Co.*, 38 W. Va 456. We think this testimony was proper.

It is assigned as error that it was not proper to permit plaintiff to exhibit to the jury the stump of his injured leg. But this Court has held that, in an action for injury, it was not improper to exhibit to the jury the injured part. *Carrico* v. *W. Va. C. & P. Ry. Co.*, 39 W. Va. 86.

The evidence shows that the father was willing that the boy should have a job on the outside of the mine, which necessitated

his riding upon the motor; and the defendant offered to prove that this was a more hazardous employment than that of coupling, and uncoupling cars, on the inside of the mine.    But the court excluded this evidence, and this is assigned as error.    We think this was properly excluded.    It is not a question of comparative dangers; neither does it appear that the father knew that the outside work was more dangerous than the work inside the mine.    We can not see how the matter of a comparison of dangers could, in the remotest degree, prove the extent of the danger of the work of coupling the cars on the inside of the mine, unless the extent of the dangers of the work outside were also proved, and this would make another and an immaterial issue; neither do we see how such evidence could prove the capacity of the boy to comprehend and avoid the danger of the work he was actually put to perform.    There was no error in excluding this testimony.

The giving of plaintiff's instructions Nos. 1 and 2, and the refusal to give defendant's instructions Nos. 1 and 3 is also assigned as error.

Plaintiff's instruction No. 1 reads as follows:    "The Court instructs the jury that if they believe from the evidence in this case that the plaintiff, Jackson M. Ewing, was employed by the defendant company to work in its mine, and that, pursuant to such employment, he entered into the service of said company, and while engaged in the service of the defendant company, under the said employment, he was injured, as alleged in the plaintiff's declaration; and if the jury further believe that at the time of said injury the said plaintiff, Jackson M. Ewing, was under fourteen years of age, then the presumption is that he was incapable of understanding and appreciating the dangers incident to his employment and unless it has been shown by a *preponderance* of the evidence in this case that the plaintiff was at the time of said injury capable of understanding and appreciating the dangers incident to his employment, then they should find for the plaintiff and assess his damages at a sum commensurate with the injuries sustained."

This instruction tells the jury that if the plaintiff was under fourteen years of age, the presumption is that he was incapable of understanding and appreciating the danger incident to his employment, and casts upon the defendant the burden of prov-

ing that he was in fact competent to appreciate the dangers. If this is not law, the instruction is clearly prejudicial. Does it correctly state the law?

This Court held in *Wilkinson* v. *Coal & Coke Co.,* 64 W. Va. 93 (61 S. E. 875); "That an infant, after reaching the age of 14 years, is presumed to have sufficient discretion and understanding to be responsible for his wrongs, to be sensible of danger and to have power to avoid it." Is not the converse also true? Why say that at the age of 14 years an infant is presumed to have capacity to understand the dangers of his employment, unless he is presumed before that age not to have it? The positive rule necessarily implies the negative one. We understand the law to be this, that the right of an infant to recover for an injury received while in the service of his master on account of the master's negligence in setting him to perform a dangerous duty, depends upon the question whether, or not, the infant assumed the risk. And in order to show that the infant did in fact assume the risk, it is necessary to prove that he had knowledge of the danger, and ability to avoid it. This may be done by proving that the master instructed him, or that he gained the knowledge from others, or from actual experience; or that his natural capacity and the nature of the employment were such that he must be presumed to have such knowledge. In the latter case the law charges him with constructive knowledge of the danger. Lack of capacity is never conclusively presumed from infancy unless the infant is under 7 years of age. Age is only an evidential fact tending to prove constructive knowledge, or lack of knowledge. If over 14 it tends to prove capacity and knowledge; if under 14, it tends to prove the reverse of this. It is not conclusive. Capacity may be shown, notwithstanding the infant is under 14 years of age; and incapacity may be shown notwithstanding the infant may be over 14 years of age. The presumption of capacity at 14 years, and of incapacity under that age are both rebuttable presumptions. Labatt on Mas. & Serv., sec. 249; *Nagle* v. *Railroad* Co., 88 Pa. 35; *Kehler* v. *Schwenk,* 151 Pa. 505; *May* v. *Smith,* 92 Ga. 95; *Cirrick* v. *Woolen Co.,* 146 Mass. 182 (2nd Appeal) 151 Mass. 152; *Buckley* v. *Rubber Mfg. Co.,* 113 N. Y. 640; *Evans* v. *Iron & Tube Co.,* 42 Fed. 519. It is a mere rule of evidence and does not affect the right of either master or servant. It only serves to fix on one party

or the other, as the case may be, the burden of supplying the proof of such facts as will show whether, or not, the risk was really assumed by the infant. If under 14 years old, the burden of proof is on the master; if over 14, it is on the infant. It would seem to be no hardship in either case to discharge the burden. All infants of the same age have not the same capacity. If they had, the presumption would necessarily be conclusive. But it is a matter of common knowledge that all persons are not born equal in respect to mental capacity and physical powers; and therefore the presumption in either case may be rebutted by other evidence.

If an infant voluntarily enters into hazardous employment, with a full comprehension of its attendant dangers, he may fairly be said to have assumed the risk, not only of the injury which might result on account of his own negligence, or by mere accident, but also the risk of injury from the negligence of a fellow servant. Labatt in his work on Master and Servant, sec. 291, states the rule as follows: "The principle has frequently been laid down or recognized that a minor assumes the ordinary risks of any employment which he undertakes, in so far as those risks are, or ought to have been, known to and appreciated by him, whether the source of this knowledge be his own observation and experience, or the instructions which he has received from his employer or his employer's representatives. In other words, the fact that the servant was a minor does not enlarge his rights, where it is once established that he understood the danger."

Of course, it could not be said that one had assumed the risk of a danger which he did not comprehend or understand, because assumption of a risk is a voluntary act requiring a positive operation of the mind. It is based upon knowledge, actual or constructive, of possible dangers. Without such knowledge there could be no assumption. One cannot be said to assume the risk of a thing which he never thought could happen. This is axiomatic. Neither could it be said, on the other hand, that the master was negligent in failing to instruct his minor employe concerning the dangers attending his employment, when his duties are so simple and the danger so obvious that the minor could not fail to see them himself; nor when the minor is possessed of the requisite knowledge by any other means. The rule requiring the master to instruct his servant, and to warn

him of danger, is only for the purpose of supplying him with information which he is not presumed to have; and if it is shown that the servant did in fact possess the knowledge, the failure to warn could in no sense be said to be the proximate cause of the injury; and if not the proximate cause of the injury, of course it could not be actionable negligence.

In discussing the question of the assumption of risk by an adult, and by a minor servant, Labatt, in the same section above quoted from, further says: "In the case of an adult the servant's inability to recover for injuries resulting from ordinary risks is declared in terms which are indicative of the fact that his comprehension of those risks is presumed in the absence of evidence which justifies the opposit conclusion. In the case of a minor, on the other hand, the defense of an assumption of ordinary risks is viewed as one which is merely conditional upon the production of specific and positive evidence going to show that the risk in question was, as a matter of fact, comprehended. In short, where a minor is concerned, ordinary risks are, for evidential purposes, always treated at the outset of the inquiry as extraordinary, and the burden of establishing the servant's comprehension of the particular risk is cast upon the employer."

And in discussing the rule of presumption of capacity from the age of 14, which seems to have been first announced by the supreme court of Pennsylvania in the case of *Nagle* v. *Allegheny Valley R. R. Co.,* 88 Pa. 35, the same author, in section 249 says: "But the theory that, at the age of fourteen years, the stage reached in the development of the child's faculties is so definite that the burden of proving his non-appreciation of the risks of the service is shifted, is contradicted by the weight of authority, and does not seem to rest upon any adequate logical basis." If the law does not shift the burden from the master after the infant reaches 14 years of age, *a fortiori* it would not be shifted before that age. But this Court has held in *Wilkinson* v. *Coal & Coke Co., supra,* that if the infant is 14 years of age the burden is shifted to him to show incapacity.

It would, therefore, seem that the presumption of incapacity in an infant under 14 years to comprehend the hazards of a dangerous employment is well established. Only a few courts have held that the age of 14 years raises a presumption of ca-

pacity; none have held that capacity is presumed under that age. The following authorities hold that there is a presumption of incapacity if the infant is under 14 years of age, viz: *Molaske v. Coal Co.,* 56 N. W. (Wis.) 475; *Trumbo's Admr.* v. *Street Ry. Co.,* (Va.) 17 S. E. 124; *City of Roanoke* v. *Shuff,* 97 Va. 419 (34 S. E. 34,) and *Lynchburg Cotton Mill Co.* v. *Stanley,* 46 S. E. 908.

The rule adopted by Wisconsin, Virginia and by this Court in *Wilkinson* v. *Coal & Coke Co.,* 64 W. Va. 93, is decidedly in favor of the master, as it puts the burden of proving incapacity on the infant after that age; and it would seem to be a wise departure from the ancient rule, if it be a departure at all, justified by experience, and by legislative enactments which fix upon that age as the time when an infant is permitted to perform many important acts. It operates to the benefit of many boys of poor families, who earn their living, many of whom are as capable as men to perform much of the labor necessary in, and about, mines and factories. Much of the labor to be performed in coal mines is attended with very little danger, except from those greater calamities which affect all servants employed in that business alike, such as explosions of gas, coal dust, etc. This rule will encourage their employment; and is, therefore, favorable to both employer and employe. It is also in harmony with the spirit of our law which permits the employment of boys, over 14 years of age, in coal mines.

In most states, including West Virginia, contributory negligence is a matter of defense, the burden of proving which is on the defendant; and in the case of an infant plaintiff under the age of 14 years, in order to charge him with contributory negligence, it is just as essential to prove his capacity to comprehend the dangers that might result from his negligent act as it is to prove his capacity in order to establish the fact that he assumed the risk of dangers connected with his employment. The burden of proving capacity is upon defendant in either case. 1 Sher & Red. on Neg., sec. 108; 1 Thomp. on Neg., sec. 308 and 309; 4 *Id.* secs. 4688 and 4689; *Comer* v. *Consolidated C. & M. Co.,* 34 W. Va. 533; *Riley* v. *R. R. Co.,* 27 W. Va. 146.

Infants under 14 years are often chargeable with contributory negligence, but not generally, as a matter of law deducible from the nature of the act causing the injury, which is generally the

case when applied to an adult. There must be evidence of ability to understand and to guard against the danger; and hence the negligence of an infant under 14 is a question of fact for the jury, because it involves capacity concerning which the jury must decide. 1 Labatt on Mas. & Serv. secs. 250 and 348 and cases cited in note. In *Turner* v. *N. & W. R. R. Co.* 40 W. Va. 675, this Court held that a boy 17 years old was not guilty of contributory negligence in performing an act which would unquestionably have been contributory negligence in an adult.

If the nature of the employment is simple, and attended with little risk of danger, less capacity is required to perform it; but if attended with much danger, more capacity is necessary. And when an infant is under the age of 14 years it can rarely be said that, as a matter of law, he is chargeable with contributory negligence. The majority of the courts regard the question of his negligence one of fact to go to the jury even when he is much older than 14 years. 1 Thomp. on Neg. sec. 310, and cases cited; 1 Labatt on Mas. & Serv., sec. 390, and note of cases. Negligence itself, as well as contributory negligence, in the great majority of cases, is a mixed question of law and fact; and if the court has correctly instructed the jury concerning the law, and the evidence is conflicting as to the facts, courts are not justified in disturbing the verdict, unless it is clearly and palpably wrong. 4 Thomp. on Neg., secs. 7408, 7409; *Foley* v. *City of Huntington,* 51 W. Va. 396; *Tompkins* v. *Kanawha Board,* 21 W. Va. 224; *Johnson* v. *Railroad Co.,* 25 W. Va. 570. "When a given state of facts is such that reasonable men may differ upon the question whether there was negligence or not, the determination of the matter is for the jury." *Raines* v. *Railway Co.,* 39 W. Va. 50. We think plaintiff's instruction No. 1 correctly states the law.

It is insisted by counsel for plaintiff in error that defendant's negligence is not the proximate cause of the injury. This may be true in fact, but it is not true in law. The car rolling down the grade and striking against plaintiff is the actual and immediate cause of his injury. This may not have resulted from any direct omission of duty by defendant, or by any of its servants. But although this is the immediate physical cause of the injury, it does not constitute the negligence complained of, which is the employment of the infant plaintiff to perform a

dangerous work when he was too young to understand it and to avoid its dangers.   If the evidence is not sufficient to establish the fact that plaintiff, notwithstanding his infancy, did comprehend the danger and could have avoided the injury by the exercise of reasonable care, his employment was negligence and it then becomes an immaterial question as to what agency set the car in motion.   It was a thing that was liable to happen; and the defendant's negligence in employing plaintiff is, in law, the cause of the injury.   It reaches over all intervening causes that may have contributed to the injury and is, in law, the primary, or proximate cause.   If plaintiff lacked proper capacity he was not guilty of contributory negligence.

It follows from what we have already said that it was not error to refuse defendant's instruction No. 1, which is as follows:   "The Court instructs the jury that if they believe from the evidence that the plaintiff was injured while at his post of duty in the employment of defendant by being struck by an empty coal car in motion, while he the plaintiff was removing a coupling from another empty coal car which was at the time stationary, and if they further believe from the evidence that the said car which struck the plaintiff was set in motion by some person, agency or cause unknown to the defendant and of which the defendant did not and could not have knowledge, they must find for the defendant."   As before stated, the negligence for which defendant is liable is employing a minor and placing him to perform a work attended with danger which he was not capable, on account of his age, of comprehending and avoiding, and not that it, or any of its employees, were negligent in respect to the particular act which was the immediate cause of the injury.

Plaintiff's instruction No. 2, on the measure of damage, is objected to.   We think it states the law correctly.   It instructs the jury that in estimating his damage they are at liberty to compare plaintiff's health and condition, before the injury, with his present condition in determining the effect of the loss of his leg upon his capacity to earn money, but instructs them to exclude from their computation the time until he should arrive at the age of 21 years of age.   The proof showed that he was at the time of the injury earning $1.25 a day for his father.   If he could earn $1.25 at that age he could certainly earn at least

the same when he becomes 21 years of age. From the nature of the case we do not see how any better criterion could be furnished than the wages he was earning at the time of his injury. An instruction similar to this was approved by this Court in *Riley* v. *R. R. Co.*, 27 W. Va. 145, see page 161, where other decisions are cited in support of it. The time of plaintiff's infancy was very properly excluded by the instruction, because the suit was for his own benefit, and his earnings during infancy belonged to his father. *Comer* v. *Ritter Lumber Co.*, 59 W. Va. 688. If plaintiff was entitled to recover anything, we can not say that eight thousand dollars for the loss of his leg is excessive. His injury is both severe and permanent. We affirmed a judgment at this term where $16,000 was allowed for the loss of an arm. *Goshorn* v. *Wheeling Mold & Foundry Co.*, 65 W. Va. 250 (64 S. E. 22).

Did the court err in refusing to set aside the verdict? Notwithstanding the legal presumption of incapacity which has to be overcome by evidence, the testimony of witnesses on the question of plaintiff's mental capacity to comprehend and avoid danger is conflicting. It is unnecessary to review it at all. On the one hand it is shown that plaintiff had worked in the mine for about nine months prior to the accident, but nearly all the time at "trapping"—opening and closing doors, and giving signals to approaching trains of coal cars by waving his lamp; and furthermore, that he had coupled cars in the mine about two weeks before the day of the accident. But there is no evidence that he ever before knew of a car getting loose and running down the grade where he was coupling, or that he had ever been warned against such an accident. Mr. Laing was asked: "Did you give him instructions with reference to the dangers on the parting where he was coupling and uncoupling cars? A. He didn't uncouple them. It wasn't his duty. His duty was simply to couple the loads." But, in contradiction of this, plaintiff says he was put to work by Mr. Laing at the place where he was hurt, and that he had not been given any warning of dangers, or even instructions how to do the work, but that he learned by seeing others do it. There is evidence also that the electric light bulb at this point had been broken some time before the accident, and that it was dark in the mine, the only light being a small miner's lamp which plaintiff carried in his

hat. In addition to this conflicting evidence, the jury had a right to take into consideration plaintiff's appearance at the time he gave his testimony, as an evidential matter in determining his capacity to comprehend and avoid the danger. The evidence in this case is such that reasonable minds might differ as to the correct conclusion to be reached from it; and to set it aside would be to invade the province of the jury.

Defendant's instruction No. 2 is the same as its No. 1 with these words added, viz: "unless they further believe from the evidence that the plaintiff did not have sufficient mental capacity at the time to know and appreciate the dangers of his employment." This correctly states the law, and was given at the request of defendant. It must therefore be inferred that the jury found plaintiff not to have sufficient capacity to comprehend the dangers of his employment, otherwise the verdict would have been for the defendant. This was a question to be determined by the jury. 1 Sher. & Red. on Neg., sec. 73 (a); 5 Thomp. on Neg., sec. 5369; 1 Labatt on Mas. & Serv., sec. 390; *Renne* v. *U. S. Leather Co.,* 107 Wis. 305; *Williams* v. *S. & N. Ala. R. R. Co.,* 91 Ala. 635; *At. & W. P. R. Co.* v. *Smith,* 94 Ga. 107; *Simms* v. *E. & W. R. Co.,* 84 Ga. 152; *Camp* v *Hall,* 39 Fla. 535; *Hanson* v. *Ludlow Mfg. Co.,* 162 Mass. 187;*Smith* v. *Irwin,* 51 N. J. L. 508; *Verdelli* v. *Gray's H. C. Co.,* 115 Cal. 517; *Hayden* v. *Smithville Mfg. Co.,* 29 Conn. 548.

The court did not err in refusing to set aside the verdict, and the judgment is affirmed.

*Affirmed.*