JAMES CANN, Judge.
On the 29th day of March, 1950, and for some time prior thereto, a state road commission crew was engaged in the construction of a new road leading from Beckwith to the 4-H camp in Fayette county. During the course of said work it became necessary to do some blasting by the use of dynamite, and it was the custom of the foreman of said crew, when dynamite was needed, to transport as much of the same as was needed, together with the detonating caps, in a state road pick-up truck from the state road garage, in that district, to the site of the road construction, where, approximately two hundred yards from said site, the truck was parked on an old sawmill site which was situate back and away from an old road known as *170 the old Laurel Creek road. The dynamite was packed in a corrugated carton which was enclosed in a wooden box and it was always transported and left on the bed of the truck. The detonating caps were stored separately in a steel box, under lock, which was attached to the cab of said truck. On or about the day before the accident, which injured claimant, the foreman had transported to the site of the road construction in the pick-up, a carton of dynamite and some caps and had parked at the usual place. One end of the carto.n was broken open and a sufficient amount of dynamite was taken by the foreman, or a member of his crew, and some caps from the steel box, to the construction site there to be used. The carton containing the rest of the dynamite was left on the bed of the pick-up. On this particular day, about one thirty o’clock in the afternoon, Donald McKinney, brother of the claimant, was riding on his bicycle along the old Laurel Creek road proceeding towards the site where the road commission crew was working. He had been there several times attempting to obtain employment at this particular project. When he reached the spot where he could see the pick-up, he alighted from his bicycle, proceeded to the truck, and, after ascertaining that none of the road crew could see him (although he stated that he could see their legs from where he was) deliberately and designedly took ten or twelve sticks of dynamite from the carton on the truck and then opened, or broke open, the steel box on said truck and from it took a quantity of detonating caps. He then proceeded to his home, which was approximately one to three miles away, and there hid the dynamite and caps in a drawer in his room. On the following day he, in company with the claimant his brother, and a still younger brother, took the dynamite and caps to a site about one hundred feet from his home where Donald and claimant blew out, or attempted to blow out, three tree stumps. In this operation Donald and claimant used about nine sticks of dynamite and a number of caps. At the beginning of this operation claimant, at the request of his brother, obtained some wire from their home. Donald then proceeded to attach the caps to the dynamite, and to the caps he connected two wires, about fifty feet in length, one of which he then connected to a dry *171 cell flashlight battery, which he held between the ring and little fingers of his right hand, and the other wire he held between the thumb and forefinger of said hand. Then, when all was in readiness Donald would take the wire that he held between the thumb and forefinger and make contact with the battery he held between the other fingers, with the result that the dynamite exployed. After completing the stump episode, Donald and claimant decided to see what dynamite would do in water, so Donald cut a stick of the dynamite with a knife, handed the claimant a piece about one and a half inches in length, made the necessary attachments with wire and battery as above mentioned, then proceeded to a knoll some distance away, leaving claimant holding the piece of dynamite near a creek nearby. Upon a prearranged signal claimant was to throw the dynamite in the creek and Donald would explode it. When Donald reached the knoll he became concerned about the younger brother and as he turned to observe his whereabouts accidently made contact with the wire and battery he held in his hand, causing the dynamite held by claimant to explode, which resulted in the loss of the left forearm and left eye of claimant. The testimony disclosed that Donald was nearly seventeen years of age and that claimant was fourteen years of age at the time this accident occurred.
At the conclusion of the hearing of this case, counsel for claimant requested permission to file a brief in support of his contention in this matter, which privilege was granted and an able brief was filed. In order to best ascertain how the final determination of the case was reached by the court, it is deemed best to discuss the several points raised by counsel in his brief and the testimony offered.
In support of proposition No. 1, counsel for claimant in his brief cites a number of West Virginia and Virginia cases in support of his contention that the state road commission of West Virginia was negligent in the manner in which its employees handled dynamite which was used on the road building project on the new Fayette county 4-H camp road. The cases cited deal with the proposition that one who handles *172 explosives, they being dangerous instrumentalities, should use ordinary care and prudence (some cases say utmost and highest degree of care) in handling the same so that injury will not be caused to children or immature children who are accustomed to play at or near these dangerous instrumentalities, or especially when it is known that said children may he expected to meddle with it; the degree of care to he used must he commensurate with the danger.
The evidence in this case disclosed that the truck which contained the dynamite to be used on the road project in question was parked on an old sawmill site; that though said truck could be seen by children and adults who at times traversed said road, yet not one scintilla of evidence was offered to indicate that said children were wont to, or expected to, play at or near the truck or dynamite, or that any of the said children were in the habit of, or ever engaged in, pilfering, handling, playing or meddling with said dynamite, or that said dynamite was accessible to said children; or that any of said children know or ever had any knowledge that the carton on said truck contained dangerous explosives. Even Donald McKinney testified, when asked if he had seen any dynamite around there the day before he took the dynamite, “No, I hadn’t paid any attention to it.” (r. p. 18). Therefore, it can be readily seen that the facts in this case differ very materially from those stated in the cases cited by counsel. If we are to follow the rule, stated by our Supreme Court and the courts of other states, that the degree of care to be used in the handling of explosives must be commensurate with the danger, then it follows from the facts presented to us that the agents of the respondent used all of the care necessary and therefore we must conclude that the respondent, or its agents and employes, was not negligent in the manner in which the dynamite used on the road building project in question was handled.
As to proposition No. 2, advanced by counsel in his brief, we must consider the question of proximate cause, and whether or not the intervention and negligence of Donald McKinney ¿vas the sole and proximate cause of the injury suffered by *173 claimant. Our Supreme Court has defined proximate cause as follows:
“Proximate cause is a cause which in natural sequence undisturbed by any independent cause produces the result complained of.”
For the sake of argument, let us assume the respondent was negligent in its handling of the explosives in question — what occurred? Donald McKinney, an infant about seventeen years of age, who possessed the discretion of an adult for the reasons hereinafter set out, without any apparent invitation deliberately and wrongfully took the dynamite from the state road truck. He knew that the best time to secure it would be when the road crew was engaged in its work and therefore less likely to detect his wrongful act. He knew when he took the dynamite that the said dynamite would be useless without the necessary detonating caps, (r. p. 29) and therefore went deliberately to the steel box where he found and took the necessary caps. He then proceeded to his home where he placed or hid the dynamite and caps in a drawer in his room —which, to us, clearly completed one episode. The next day Donald and his brother, the claimant, took the dynamite and caps to their back yard and there proceeded to blow out, or attempt to blow out, some tree stumps. The preparation made by Donald in the use of the wires and batteries to explode the dynamite amazed this court, especially the ingenuity and knowledge exhibited by him after testifying that he had never used dynamite and that his only knowledge of its use, and the method of exploding the same, was in watching his uncle on one occasion use and explode dynamite. Although one may say that the preparation and use of the required agents to explode the dynamite by Donald on the day in question were somewhat crude, still they were effective. In fact, when asked “Did you have any trouble in making those three blasts” he answered “I think it got tangled one time and didn’t go off; you see, we didn’t have tape in the middle. We had two pieces of wire.” (r. p. 32). Where did Donald acquire this knowledge? As to the claimant, if , as he says, he had no knowledge of how explosive or powerful dynamite was, he certainly did or could *174 have acquired that knowledge after the use of dynamite on the first stump. He states that he realized (then) that an explosive that powerful would be dangerous to handle if you did not know very much about it. (r. p. 47). Yet, in spite of this knowledge he assisted his brother in exploding the dynamite and assisted his brother, after talking the matter over, to prepare for explosion the piece of dynamite which later was accidentally exploded by his brother Donald and resulted in the damages complained of. What occurred the day following the taking of the dynamite was a wholly different episode, an entirely separate and intervening act that had nothing to do with the original taking. Considering the facts to this point can we — or anyone — say that the actions of Donald were those of a youth considered as being retarded insofar as his mental capacities are concerned? That he is forgetful and not mentally equipped to exercise as good judgment as the normal boy of his age? We say not. Counsel for claimant would have us consider his experience, but can anyone say from the method by which Donald prepared and exploded the dynamite that he did not possess some experience? We think he had far more than the average boy his age; in fact far more than the average adult who had had the limited knowledge of dynamite and the method of exploding it that he says he had. As to the claimant and the part he played in the act or acts which led to his injuries, we can only say that he contributed considerably to his own injuries. Our Supreme Court has held that:
“An infant fourteen years or over is presumed to possess sufficient mental capacity to comprehend and avoid danger and if he relies on his want of such capacity the burden of proving it is upon him.” Ewing v. Lanark Fuel Co. 65 W. Va. 726; Simmons v. Chesapeake & Ohio R. R. Co., 97 W. Va. 104.
This burden has not been met by claimant; in fact the court thought — from his appearance and demeanor — that he was quite an intelligent young man.
We repeat that the act of the respondent in leaving the dynamite and caps in question on the truck, under the circum *175 stances of the case, was not negligence; that the intervention and negligence oí Donald McKinney, having appreciably followed the act of the respondent in point of time, were the independent, efficient or proximate causes of the damage to claimant; they were happenings distinctly intervening between the act of respondent and the accident, without which the accident would not have happened. Under these circumstances could there possibly be a moral obligation on the part of the state to make an award of the public revenues? We think not. Therefore, an award is hereby denied and the claim dismissed.
IN VIEW OF THE CONCLUSIONS REACHED UPON THE FIRST TWO POINTS RAISED BY COUNSEL FOR CLAIMANT IN HIS BRIEF. IT IS UNNECESSARY TO ANSWER OR CONSIDER THE THIRD POINT.